IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| UNITED STATES | : | CRIMINAL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DENIS SHUSTERMAN, | : | NO. 04-0364 |
| Defendant. | : | |


MEMORANDUM

LEGROME D. DAVIS, J.                                          SEPTEMBER  29, 2006

On September 13, 2006, after considering Defendant  Motion to Withdraw His

Guilty Plea (Doc. No. 67), the Government  Response (Doc. No. 69), the Government

Supplemental Response (Doc. No. 96), Defendant  Supplemental Motion (Doc. No. 97) and the

evidence and testimony presented in the hearing held on September 6, 2006 and September 13,

2006, this Court denied defendant  motion.  Although the Court set forth the rationale for its

decision on the record, this memorandum will provide a more thorough explanation of the

Court  reasoning.

On December 9, 2004,[1] a grand jury indicted defendant on thirty-five counts of wire

fraud in violation of 18 U.S.C. § 1343, one count of bankruptcy fraud in violation of 18 U.S.C.

§ 157, one count of bank fraud in violation of 18 U.S.C. § 1344, one count of perjury in

violation of 18 U.S.C. § 1623, one count of tax evasion in violation of 26 U.S.C. § 7201, nine

counts of filing false tax returns in violation of 26 U.S.C. § 7206(1), and three counts of

---

[1]  This date represents the superseding indictment.  The original indictment was handed down on June 24, 2004.

procuring presentation of false documents to the IRS in violation of 26 U.S.C. § 7206(2).  The

government also alleged forfeiture under 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(2).

The allegations contained in the Superseding Indictment set forth a pattern of fraud

that permeates many aspects of defendant's business and personal life.  According to the

Superseding Indictment, defendant used numerous wire transfers to steal $10.8 million from his

employer, Kimber Manufacturing ("Kimber"), and its president, Leslie Edelman, during the

period from September of 1996 to March of 2003.  Defendant defrauded the IRS by

misinforming the IRS about his assets so that the IRS could not determine how best to proceed

in its litigation against defendant with regard to Coventry Deli, one of defendant's failed

business ventures.  Defendant provided a number of false statements to Millennium Bank in

order to secure a loan to purchase a house in Rancho Santa Fe, California.  During the tax years

from 1997 to 2003, defendant frustrated the IRS's ability to assess and collect income taxes

from him by failing to file returns and using a corporate entity to conceal income.  In addition,

defendant filed tax returns that included many false items regarding income and deductions.

Finally, defendant, through his lawyer, falsely claimed that particular tax returns had already

been filed.

Defendant's trial began on April 17, 2006.  During the trial, the government

presented an absolutely overwhelming case against defendant.  The government presented the

testimony of thirty-five witnesses, submitted hundreds of exhibits, and provided stipulations to

the testimony of over 1,000 other fact witnesses.  On May 1, 2006, the government rested, and

defendant's case began.  Throughout the trial, defendant was extremely active in his defense.[2]

---

[2] As this Court noted during defendant's plea colloquy, "I think you have a very good understanding of your rights
at trial because it has been my personal observations that you have participated in this case at a very high degree
from every – literally every step of the way in this courtroom." 5/3/06 Tr. at 31.

On the twelfth day of trial, May 3, 2006, while both defendant and his expert, Mr. James

DiGabriele, were on the stand,[3] defendant decided to plead guilty to all fifty-one charges

against him, i.e. thirty-five counts of wire fraud, one count of bankruptcy fraud, one count of

bank fraud, one count of perjury, one count of tax evasion, nine counts of filing false tax

returns, and three counts of procuring presentation of false documents to the IRS.  After

conducting a lengthy and extensive plea colloquy with defendant, this Court accepted

defendant's guilty plea. See 5/3/06 Tr. at 2-51.

On July 5, 2006, over two months after pleading guilty and as his sentencing date

approached, defendant filed the instant motion seeking to withdraw his guilty plea.[4]

Defendant's request for an evidentiary hearing on this motion was granted, and a hearing was

held on September 6, 2006 and September 13, 2006.

II.     DISCUSSION

A court may permit a defendant to withdraw a guilty plea before sentencing if the

defendant can show a "fair and just reason" for requesting the withdrawal. Fed. R. Crim. P.

11(d)(2)(B).[5]  A court must consider three factors when evaluating a plea-withdrawal motion:

(1) whether the defendant asserts his innocence; (2) the strength of defendant's reasons for

withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.

United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003) (citing US v. Brown, 250 F.3d 811,

---

[3] Because defendant's expert, Mr. DiGabriele, was unavailable, defendant began his testimony on May 2, 2006.
Mr. DiGabriele began his testimony on May 3, 2006, and defendant was to complete his testimony after Mr.
DiGabriele finished testifying.

[4] On June 21, 2006, defendant retained new counsel.

[5] Motions to withdraw guilty pleas before sentencing are governed by Federal Rule of Criminal Procedure 11(d).
Prior to 2002, Federal Rule of Criminal Procedure 32(e) governed withdrawal of a guilty plea.  As part of the
"general restyling of the Criminal Rules," which occurred in 2002, the substance of Rule 32(e) was moved to Rule
11(d) & (e). See Advisory Committee Notes to Rule 32, 2002 Amendments; Advisory Committee Notes to Rule
11, 2002 Amendments.  Because the substance of the rule has not changed, precedent referring to Rule 32(e)
continues to be authoritative. United States v. Wilson, 429 F.3d 455, 458 n.2 (3d Cir. 2005).

815 (3d Cir. 2001)).  The analysis requires that a court consider each factor but does not make any one factor mandatory.  United States v. Wilder, 134 Fed. Appx. 527, 528 (3d Cir. 2005) (noting that failure to establish one factor does not necessarily dictate rejection of the motion). The burden to demonstrate a fair and just reason falls on the defendant, and that burden is substantial. Jones, 336 F.3d at 252 (citing United States v. Hyde, 520 U.S. 670, 676-77 (1997)).

A.      Assertions of Innocence

Under the test outlined in Jones, the first inquiry is whether defendant properly asserted his innocence as part of his request to withdraw his plea.  Defendant argues that he has "asserted his innocence at every stage of his criminal prosecution." Def's Mot. at 5.  However, bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea. United States v. Brown, 250 F.3d 811, 818 (3d Cir. 2001).  Assertions of innocence must be buttressed by facts in the record that support a claimed defense. Id.  In the instant matter, defendant has failed to provide any fact that supports his claim of innocence.

The only evidence presented at the evidentiary hearing that could conceivably support a claim of innocence on the wire fraud charges is defendant's testimony that his pay was not $125,000 a year but, rather, $125,000 a month, i.e. $1,500,000 a year, plus a one-time $5 million bonus.[6]  Defendant's assertion regarding his pay is against the extraordinary weight of the evidence presented during the trial.  Leslie Edelman, the president of Kimber, testified that defendant was entitled to $125,000 a year.  Six witnesses at trial testified that Mr. Edelman told them that defendant's income was $125,000 a year.[7]  Eight witnesses testified that defendant

_____

[6]  Defendant did not provide any evidence to support his innocence on the other charges.

[7]  The six witnesses were Gordon Edelman, Michelle Malloy, Jerry Goldman, Mary Vidas, Ira Block and Robert Billet.

told them that he made $125,000 a year.[8]  If defendant's assertion that he made $1.5 million a year from Kimber is correct, he would have made double the salary Leslie Edelman, the president of Kimber, made.  In addition, even if defendant made $125,000 a month, his testimony would still not support his innocence because, by the end, he was taking over $250,000 a month from Kimber.

This Court finds defendant's assertion of innocence to be utterly lacking in credibility. After having the opportunity to observe and evaluate defendant's credibility during his trial testimony and his evidentiary hearing testimony, this Court finds that defendant is the most specially talented liar this Court has ever encountered.[9]  His version of the truth appears to be that which will benefit him most at the moment; it changes with his needs and at his whim. Defendant has a history of lying to his friends, lying to his family, and lying under oath.

This Court concludes that defendant has failed to adequately assert his innocence under Jones, as bare assertions of innocence do not entitle defendant to the privilege of withdrawing his guilty plea. See United States v. Golden, No. CR. 00-608-01, 2001 WL 1175118, at *4 (E.D. Pa. July 27, 2001).

B.      Strength of Reasons for Withdrawing the Plea

The second prong of the Jones test requires the Court to examine defendant's reasons for attempting to withdraw his guilty plea.  Defendant contends that he should be allowed to withdraw his guilty plea because it was involuntary due to the ineffective assistance of prior counsel and because "material misrepresentations" made by prior counsel induced him to take

---

[8] The eight witnesses were Gordon Edelman, Mary Vidas, Richard Malak, Dan Jones, Ron Cohen, Ron Davis, Angela Frattarelli and Greg Wozniak.  Gordon Edelman and Mary Vidas heard this information from both Leslie Edelman and defendant.  While he was under oath, defendant told Angela Frattarelli that he made $10,000 a month.

[9] Defendant is also a master manipulator.  As Ronald Davis, defendant's former business partner, testified, defendant "could sell [a] ketchup popsicle to a guy in white gloves." 4/21/06 Tr. at 32.

the plea.  Def's Mot. at 6-9; see also Def's Supp. Mot. at 6-14.  In his supplemental motion, defendant argues (for the first time) that he was coerced to enter the plea when Federal Rule of Criminal Procedure 11(c)(1) was violated. Id. at 3-7.  This Court has considered each of defendant's proposed reasons and finds no reason sufficient to allow defendant to withdraw his guilty plea.

      1.     Ineffective Assistance of Counsel Claims[10]

A court will permit a defendant to withdraw a guilty plea based on ineffective assistance of counsel only if (1) defendant shows that the attorney's advice was under all the circumstances unreasonable under prevailing professional norms and (2) defendant shows that he suffered sufficient prejudice from his counsel's errors. Jones, 336 F.3d at 253-54 (citing United States v. Day, 969 F.2d 39, 42, 45 (3d Cir. 1992) and Strickland v. Washington, 466 U.S. 668, 687-91 (1984)).  With respect to the prejudice component, defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

The Supreme Court has held that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result

---

[10] Defendant's claims of ineffective assistance are undermined by statements at the plea colloquy that he was satisfied with his lawyer. See United States v. Thomas, 165 Fed Appx. 138, 141 (3d Cir. 2006).  During the plea colloquy, when the Court inquired whether defendant's prior counsel worked hard on defendant's case, defendant responded, "Yes, Your Honor." 5/3/06 Tr. at 36.  However, defendant noted that he had "some questions about the representation." Id.  Specifically, defendant noted that he believed more witnesses could have been called in his defense. Id. at 36-37.  When prior defense counsel questioned defendant about the potential witnesses, defendant agreed that these witnesses were not relevant witnesses. Id. at 36-37.  The Court then inquired:

      Court:          Any other aspects or dimensions to this representation of counsel, you want to – issue that you want to tell me about?
      Defendant:   No, Your Honor.
      Court:          Okay. So then it would be fair to say that in all other respects, you are satisfied with counsel's representation of you, then, is that right or wrong?
      Defendant:   Yes, Your Honor. That's a fair representation.
Id. at 37-38.

of the deficiencies.… If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.  In the instant matter, examining the prejudice prong is the far more expeditious way to adjudicate defendant's claim of ineffective assistance of counsel because defendant has failed to show any prejudice as a result of prior counsel's alleged deficiencies.

Defendant contends that prior counsel's "biggest flaw" was "his statement about trial strategy" because "credibility is not an appropriate defense in this case." 9/13/06 Tr. at 79-80. Prior counsel based his defense on credibility; he attempted to demonstrate that defendant was rightfully owed all the money he received from Kimber.  Defendant's counsel has not set forth a more coherent strategy that prior counsel could have used.[11]  Defendant has not established a reasonable probability that the result of the proceeding would have been different if prior counsel had used a different strategy.

Defendant argues that this case is document intensive and prior counsel was remiss in not reviewing all of the source documents for the government's exhibits. Id. at 80, 99. However, defendant is unable to point to any one of the source documents that would have supported defendant's innocence. See id. at 99 ("And can I say that a certain document should have or should not have been presented? I can't, Your Honor.").  Defendant also argues that prior counsel should have subpoenaed numerous documents. Id. at 84-85.  Again, defendant is unable to point to any document that should have been discovered, but was not.  As a result, defendant has not established prejudice to defendant.

---

[11]  Defendant's counsel later admitted that credibility was a significant part of the case. 9/13/06 Tr. at 83-84.

Defendant contends that his prior counsel was deficient because he did not review the accuracy of each of the over 1,000 stipulations presented by the government.[12] See 9/13/06 Tr. at 70.  However, neither defendant nor his counsel was able to identify a factual misstatement in the stipulations.[13] See id. at 70-72; 9/6/06 Tr. at 301.  Since defendant cannot identify a single factual inaccuracy, defendant cannot be prejudiced by counsel's alleged failure to review the stipulations.

Defendant claims that Mr. DiGabriele, the expert, should have seen the stipulations in advance of trial and that prior counsel was deficient for not providing them to Mr. DiGabriele. Defendant argues that he was prejudiced because Mr. DiGabriele would not have taken the case if he had seen the stipulations. 9/13/06 Tr. at 70.  However, Mr. DiGabriele made it clear that he would not have taken the case if he had seen the stipulations because he "would have felt uncomfortable with certain deductions," i.e. he would not have been able to testify that defendant was innocent of the tax evasion charges. See id. at 40.  Since defendant would not have had an expert witness had prior counsel acted in the manner advocated by defendant, this Court finds no prejudice from prior counsel's failure to provide the stipulations to the expert. Defendant also argues that prior counsel should have obtained the expert earlier so that the expert could have had more time to fully prepare for trial. Id. at 94-97.  Defendant does not

---

[12]  The stipulations included such statements as "Abacus Chinese Restaurant is located in Lansdale" and "Aeropostle is a national chain of clothing stores." See 9/6/06 Tr. at 297-301.

[13] Defendant and his counsel both took issue with the stipulation that stated that the Adelphia Cable bill was for cable services at defendant's residence. See 9/13/06 Tr. at 71.  Both believed that the statement should have read that the bill was for services at defendant's residence and home office.  However, the stipulation did not preclude defendant from testifying that he had a home office at his residence.

provide any evidence to support the contention that if the expert had more time, the outcome would have been different.  As a result, defendant has not demonstrated prejudice.[14]

Defendant claims that prior counsel was ineffective because he did not contact any witnesses, with the exception of one, before the day of trial. 9/13/06 Tr. at 72.  When asked by the Court whether there were any witnesses that defendant needed that were not present at trial, defendant's counsel responded, "Your Honor, I can't point to any – sit – standing here before you, that were – that were needed at trial, that weren't prepared to testify…."[15] Id.  Again, defendant has failed to establish prejudice.

Defendant argues that prior counsel was deficient because he did not review any of the government's 330 exhibits. 9/13/06 Tr. at 74.  When asked by the Court whether there are any instances in the trial transcript "where it appears that Mr. Cohen is unfamiliar with the exhibits, where he doesn't have a facility with the exhibit such that he can ask his questions," defendant's counsel responded, "Other than making the following statement, Your Honor, I can't – I'm not prepared to point to a specific example, but I – I spent a very long time reading all those transcripts and in all the transcripts, Mr. Cohen does make some specific mentions of some very – some detailed questions, some." Id. at 75-76.  Defendant is unable to identify any instance where prior counsel's alleged lack of familiarity with the government's exhibits prejudiced him.

---

[14] Defendant also contends that prior counsel was ineffective because he failed to notice that the expert had not addressed the 2002 and 2003 tax years. Id. at 97.  However, as the government pointed out, the M&D tax returns for 2002 and 2003 were not filed so it was impossible for the expert to address those years.

[15] Defendant's counsel noted that he thought Mr. Mattioni might have had some relevant information. 9/13/06 Tr. at 73.  However, Mr. Mattioni was not called as a witness during the evidentiary hearing and no evidence was presented with regard to what his testimony would have been.  Therefore, any statements about his potential testimony are pure speculation. See Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir. 2001).

Defendant contends that prior counsel should have determined that he needed a bankruptcy expert before he did. Id. at 78. However, defendant has not identified any testimony that the bankruptcy expert could have provided that he was unable to provide given the short timeframe. In addition, defendant has not identified any testimony that a different bankruptcy expert could have provided that would have assisted defendant. Again, no prejudice has been established.

Defendant claims that prior counsel was ineffective because he allegedly failed to read the grand jury transcripts. Id. at 82. Defendant argues that reading grand jury transcripts is essential because the defense attorney can impeach a witness by highlighting contradictions in his or her testimony. Id. at 83. When asked by the Court whether prior counsel had failed to raise any contradictions between the grand jury transcripts and a witness's testimony, defendant was unable to identify any contradictions.[16] Id. at 82-83.

Defendant also contends that prior counsel "did not come to trial with any semblance of organization," i.e. he had "boxes of documents," "no documents pre-marked as exhibits, he had nothing in order." Id. at 98-99. Once again, defendant has not identified one exhibit that should have been entered, but was not.

Defendant argues that prior counsel was deficient because he failed to submit proposed voir dire, proposed jury instructions and a pretrial statement. Id. at 85. When defense counsel was asked what voir dire questions should have been asked, defense counsel stated that he could "not point to a specific question that should have been asked that wasn't asked." Id. at 86. When asked what was legally incorrect about the jury instructions proposed by the government, defendant was, again, unable to identify a specific instruction that was incorrect or that should

---

[16] Defendant's counsel stated that there were some contradictions, but he was unable to identify any. At this point in the proceeding, defendant must provide more than generalized statements regarding alleged contradictions.

have been phrased differently.  Finally, defendant did not identify any issue or caselaw that should have been addressed in a pretrial statement that was not addressed by prior counsel at some point during the trial.[17]

Defendant has not established a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  Defendant has failed to provide any evidence that he was prejudiced by prior counsel's alleged deficient performance.  As a result, defendant shall not be permitted to withdraw his guilty plea based on ineffective assistance of counsel.[18]  See Strickland, 466 U.S. at 694.

2.    Counsel's Alleged Misrepresentations

Defendant contends that his prior counsel's misrepresentations regarding the potential length of his prison sentence induced him to plead guilty. Def's Mot. at 9.  However, the Third Circuit has clearly stated that "any alleged misrepresentations that defendant's former counsel may have made regarding sentencing calculations [are] dispelled when defendant [is] informed in open court that there [are] no guarantees as to sentence, and that the court could sentence him to the maximum." United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001).  During the plea colloquy, this Court thoroughly reviewed the maximum penalty for each offense and advised defendant that he faced a maximum sentence of 331 years in jail, five years of supervised release, a maximum fine of $13,500,000 and a mandatory special assessment of $5,100. 5/3/06 Tr. at 19-31.  This Court advised defendant the Sentencing Guidelines range had not been determined so "no one knows the absolute, concrete truth about where those Guidelines are." Id. at 3-5.  This Court also informed defendant that the Guidelines are

---

[17] This Court cannot recall a criminal case where the defense attorney filed a pretrial memorandum.

[18] The Court believes it has addressed all of prior counsel's alleged deficiencies.  However, the number and nature of the alleged deficiencies has been somewhat of a moving target. Compare Def's Mot. at 6-7, with 9/6/06 Tr. at 357-61, and Def's Supp. Mot. at 8-14, and 9/13/06 Tr. at 70-101.  Regardless, defendant has not identified any evidence of prejudice with regard to any of prior counsel's alleged deficiencies.

advisory, that "the sentence is left in the best exercise of judgment and discretion of the Court,"
and that, at this point, the Court did not have enough information to determine what the
sentence would be. Id. at 4, 6-7.  Since defendant was informed in open court that there are no
guarantees as to his sentence and that he potentially faces the maximum sentence, any alleged
misrepresentations made by prior counsel regarding defendant's potential sentence were
dispelled. See Mustafa, 238 F.3d at 492.

   Defendant also contends that his prior counsel's misrepresentations regarding
defendant's remaining appellate rights induced him to plead guilty.  Again, defendant was
informed in open court about the affect of a guilty plea on his rights to appeal.  After this Court
informed defendant that his "rights to appeal after a plea are very, very limited," the following
exchange occurred:

| | |
|---|---|
| Court: | The  -- you would have a right to appeal the voluntariness of the plea. You understand that? |
| Defendant: | Yes, I do, Your Honor. |
| Court: | And I would ask you, has anyone promised you, threatened you or did anything to you to make you enter into this plea against your wishes? |
| Defendant: | No, Your Honor. |
| Court: | All right. You could also, I suppose, appeal the jurisdiction of the Court, if this didn't happen in the Eastern District, or if I don't have authority over the case, you could appeal that. But I'm going to assure you that the proper jurisdictional basis is here. Do you understand that? |
| Defendant: | Yes, I do, Your Honor. |

| | |
|---|---|
| Court: | And you could also appeal if I imposed an illegal sentence, if I exceeded the statutory maximums which – or if I exceeded the recommended Guidelines range without any lawful reason, you could appeal. Do you understand that? |
| Defendant: | I understand. |
| Court: | Okay. And your rights – your appellate rights after a plea are severely limited, do you appreciate that? |
| Defendant: | Yes, I do. I understand. |

5/3/06 Tr. at 34-35.  Defendant clearly, and repeatedly, stated that he understood the effect of his plea on his appellate rights.

### 3. Judicial Interference with Plea Negotiations

Defendant contends that this Court impermissibly interfered with plea negotiations in violation of Federal Rule of Criminal Procedure 11(c)(1). See Def's Supp. Mot. at 4-6.  Rule 11(c)(1) provides, in pertinent part, that "[a]n attorney for the government and the defendant's attorney … may discuss and reach a plea agreement. The court must not participate in these discussions."[19]  The rule "makes clear that the judge should not participate in plea discussions leading to a plea agreement." Fed. R. Crim. P. 11 advisory committee's note to 1974 amend. Rule 11's prohibition of judicial involvement in plea discussions is "based on a recognition that a judge's power over an accused makes his participation in plea negotiations inherently coercive. … Rule 11 protects against these wrongs by completely removing the judge from plea negotiations." United States v. Ebel, 299 F.3d 187, 191 (3d Cir. 2002) (citations omitted).

Defendant's claims of impermissible participation in the plea agreement are premised on a passing comment that occurred off the record and out of defendant's presence after

---

[19]  Federal Rule of Criminal Procedure 11(c) is entitled "Plea Agreement Procedure."

defense counsel informed the Court that defendant intended to plead guilty. After defense counsel stated that defendant would plead guilty, the Court broke for lunch and counsel went to chambers to discuss logistics for the afternoon. While in chambers, I made the observation that two or three jurors were looking at defendant when he began testifying, but, by the time his testimony finished, none of the jurors would look at him. During the lunch break, defendant's prior counsel relayed this comment to defendant, and defendant now claims that this comment was "one factor that induced him to take the plea." Def's Supp. Mot. at 5. The first time that defendant claimed that this was a factor in his decision to plead guilty was during the evidentiary hearing held on September 6, 2006.[20]

The offhand comment made by this Court to counsel does not constitute impermissible judicial participation in plea negotiations. This Court did not participate in any discussion regarding defendant's decision whether or not to plead guilty.[21] In no way did this Court encourage defendant to plead guilty or communicate to defendant that it desired a plea. See United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006) (noting that the judge cannot communicate to the defendant that he desires a plea).

In addition, and equally significant, there was no plea agreement in this case and, most certainly, there were no plea negotiations occurring when the statement was made. See Fed. R. Civ. P. 11(c) (addressing plea agreements); see also United States v. Nguyen, No. 96-10278. 1997 WL 650960, at *3 (9th Cir. 1997); United States v. Clark, No. 94-525, 1996 WL 729812, at *10 (E.D. Pa. Dec. 19, 1996). Rather, the defendant entered an open guilty plea on the

---

[20] Defendant did not mention this statement (or its effect) in his motion to withdraw his guilty plea.

[21] Defendant argues that this Court indirectly participated in plea negotiations. Def's Supp. Mot. at 4 (citing United States v. Bruce, 976 F.2d 552, 556 n.3 (9th Cir. 1992)). In Bruce, the judge recommended that defendant accept a particular plea agreement. Bruce, 976 F.2d at 556 n.3. No such recommendation was made in this case. This Court did not participate in any plea discussion in this case either directly or indirectly.

twelfth day of trial.  Rule 11 protects the defendant by removing the Court from plea

negotiations. See Ebel, 299 F.3d at 191. Since no plea negotiations occurred, there can be no

Rule 11 violation.[22]

C.      Government Prejudice

        The final prong of the Jones test examines whether the government's ability to

prosecute the defendant is prejudiced by defendant's attempt to change his plea.[23]  The Third

Circuit has found prejudice to the government when the defendant entered the plea on the day

the trial was set to begin, "when jurors, witnesses and court personnel had been assembled for

trial." United States v. Crowley, 529 F.2d 1066, 1072 (3d Cir. 1976); see also United States v.

Davis, 106 Fed. Appx. 788, 790 (3d Cir. 2004) (finding prejudice when defendant entered plea

on the first day of trial).  In the instant matter, defendant pled guilty on the twelfth day of trial.

The fourteen jurors had heard testimony from all thirty-five government witnesses, and

defendant had his final two witnesses on the stand.  The government had been put to its burden.

Since the Third Circuit found prejudice to the government based on the facts present in

Crowley, there is no question that there is prejudice to the government in the instant matter.[24]

III.    CONCLUSION

---

[22] Even if a Rule 11 error had been committed, the Third Circuit requires the Court to consider the record as a whole to determine whether, under Rule 11(h), defendant's substantial rights were affected by the error. Ebel, 299 F.3d at 191.  In other words, a court must determine whether the error coerced defendant into agreeing to plead guilty. Id. at 192.  The alleged "coercive effect" of the Court's statement is belied by the fact that defendant did not mention coercion by the Court as a reason to withdraw his plea until two months after his motion to withdraw a guilty plea was filed. See Ebel, 299 F.3d at 192 (noting that defendant did not mention coercion by the District Court initially).

[23] The government need not show prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea.  United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995).

[24] Defendant acknowledges that he cost the government and the Court "a lot of time and money" as a result of the trial, and he "concedes that there is prejudice to the government." 9/13/06 Tr. at 65-67.

Defendant has failed to present either a credible assertion of innocence or a fair and just reason for this Court to permit him to withdraw his guilty plea.  Defendant acknowledges that his actions prejudiced the government.  <u>See</u> 9/13/06 Tr. at 65-67.  This Court finds that defendant has failed to establish any of the required criteria under <u>Jones</u>.  Accordingly, this Court denies defendant's motion to withdraw his guilty plea.

BY THE COURT:

<u>/s/ Legrome Davis</u>

Legrome D. Davis, J.

16